**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LARRY LAVOICE, on behalf of himself and all others similarly situated, : : : : Plaintiff, : : v. : : UBS FINANCIAL SERVICES, INC., UBS AG, : : Defendants. : | Civ. No. 11-CIV-2308(BSL)(JLC)  ORAL ARGUMENT REQUESTED |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

                                                                Andrew J. Schaffran
                                                                Samuel S. Shaulson
                                                                MORGAN, LEWIS & BOCKIUS LLP
                                                                101 Park Avenue
                                                                New York, New York
                                                                212-309-6000 (tel)
                                                                212-309-6001 (fax)

                                                              *Counsel for Defendants*

I.     **INTRODUCTION**

Plaintiff Larry LaVoice ("Plaintiff"), a former Financial Advisor for Defendant UBS Financial Services Inc. ("UBSFS" or "UBS"),[1] purports to assert broad class and collective action claims in this Court, but his Complaint and Amended Complaint fail to disclose that Plaintiff specifically agreed on no fewer than eight occasions to individually arbitrate any claims and disputes arising from or relating to his employment with UBSFS, and to waive any right to commence or be a party to any class or collective action.

Plaintiff's arbitration agreements encompass all claims relating to disputes over compensation, including the claims Plaintiff asserts in this action (1) for unpaid overtime under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and (2) for improper wage deductions that UBSFS allegedly made in violation of the NYLL.  Under the Federal Arbitration Act ("FAA"), Plaintiff's arbitration agreements are binding and enforceable with respect to Plaintiff's individual FLSA and NYLL claims.  As the United States Supreme Court observed in its landmark decision on April 27, 2011, the FAA reflects "a liberal federal policy favoring arbitration."  AT&T Mobility LLC v. Concepcion, No. 09-893, __ S. Ct. __, 2011 WL 1561956, at *5 (U.S. Apr. 27, 2011) (internal citations omitted) (reversing decision not to enforce arbitration agreement with class action waiver).

Therefore, UBSFS respectfully requests that the Court compel Plaintiff's individual claims to arbitration and stay this action pending the completion of arbitration.

---

[1]     In his Amended Complaint, Plaintiff identifies UBSFS and UBS AG as Defendants in this action.  In fact, Plaintiff's employer and thus the only arguably proper Defendant was UBSFS.

II.    **STATEMENT OF RELEVANT FACTS**

    A.    <u>Plaintiff Entered Into No Fewer Than Eight Binding Arbitration Agreements During His Employment with UBSFS That Included Express Class and Collective Action Waivers.</u>

Plaintiff was a licensed, highly compensated Financial Advisor who worked for UBSFS (or predecessor companies) from August 2002 until his resignation in July 2010. Plaintiff voluntarily entered into multiple arbitration agreements with UBSFS that encompass all of the claims asserted in his Complaint.

As a Financial Advisor, Plaintiff's compensation was governed by UBSFS's Financial Advisor Compensation Plan ("FA Compensation Plan"), and Plaintiff expressly agreed to be bound by the terms of the FA Compensation Plan,[2] which includes the following individual arbitration agreement:

> [Y]ou and UBS agree that, unless prohibited by applicable law, **any disputes** between you and UBS **including claims concerning compensation**, benefits or other terms or conditions of employment and termination of employment . . . or any other claims whether they arise by statute or otherwise, including but not limited to, **claims arising under the Fair Labor Standards Act . . . or any other federal, state or local** employment or discrimination laws, rules or regulations, including **wage and hour laws, will be determined by arbitration** . . . By agreeing to the terms of this Compensation Plan to the fullest extent permitted by law, **you waive any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to your employment with UBS** . . . .

(Declaration of Matthew Levitan ("Levitan Decl."), filed herewith, ¶ 2 & Exhibit ("Ex.") 1, p. 19) (emphasis added).[3]

---

[2] Plaintiff executed FA Compensation Plan Acknowledgements of the FA Compensation Plan in 2007 and 2009 in which he expressly acknowledged and agreed that he received, understands and agrees that he is bound by terms of the FC Compensation Plan, including, inter alia, the arbitration agreement set forth therein. (Levitan Decl. ¶¶ 3-4, Exs. 2 & 3.)

[3] UBSFS's FA Compensation Plans for 2007, 2008, and 2010 each contained a virtually identical arbitration agreement and class and collective action waiver. (Levitan Decl. ¶¶ 5-7 & Exs. 4, 5, and 6.)

In addition, over the course of his employment with UBSFS, Plaintiff entered into no fewer than five additional agreements that included individual arbitration agreements with the same or substantially similar language.  Specifically, Plaintiff entered into the following additional agreements that included individual arbitration agreements:  (1) August 26, 2002 Employee Forgivable Loan Agreement; (2) April 8, 2009 Strategic Advance Agreement; (3) April 8, 2009 Promissory Note; (4) April 30, 2010 GrowthPlus Agreement; and (5) May 14, 2010 Promissory Note.  (Id. ¶¶ 8-12 & Exs. 7, 8, 9, 10, 11, and 12.)  The four most recent agreements (dated in 2009 and 2010) all also include class and collective action waivers in which Plaintiff expressly agreed to "waive any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to [his] employment with [UBSFS]."

In sum, Plaintiff expressly agreed on no fewer than eight occasions that he would pursue any claims arising out of or relating to his employment in an individual arbitration, rather than in court, and that he would not commence or be a party to a class or collective action.  However, despite his many agreements (1) to arbitrate his claims individually and (2) to not commence or be a party to a class or collective action, Plaintiff filed the instant putative class and collective action in this Court, without even acknowledging the existence of these multiple applicable arbitration agreements in his Complaint or Amended Complaint.

    B. <u>Plaintiff's Claims Are Expressly Covered by His Arbitration Agreements</u>.

Plaintiff alleges that UBSFS violated (1) the FLSA and NYLL by failing to pay him overtime for all hours worked over 40 in a work week, and (2) the NYLL by making allegedly unauthorized deductions from Plaintiff's wages.  See Amended Complaint ("Am. Compl.") ¶¶ 4, 5, 62, 63, 75, 76, 85, 86.  Plaintiff's FLSA and NYLL claims clearly are subject to the arbitration agreements described above.  The 2009 FA Compensation Plan's arbitration provision agreed to

by Plaintiff covers "any disputes between [him] and UBS including claims for compensation, . . . claims arising under the Fair Labor Standards Act [FLSA], . . . or any other . . . state or local employment . . . laws . . . including wage and hour laws [such as the NYLL]."[4]  (Levitan Decl. ¶ 2 & Ex. 1, p. 19.)  Thus, it is clear that Plaintiff's claims are covered by his arbitration agreements and must proceed individually in arbitration rather than this Court.

### III. THE COURT SHOULD STAY THIS ACTION AND COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION BECAUSE ALL CLAIMS IN THE COMPLAINT ARE SUBJECT TO MANDATORY ARBITRATION.

#### A. The Federal Arbitration Act And Supreme Court Authority Require The Court To Enforce Plaintiff's Arbitration Agreements.

The Federal Arbitration Act ("FAA") broadly provides that:  "A written provision . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements."  AT&T Mobility, 2011 WL 1561956, at *4.  In enacting the FAA, Congress intended to overcome courts' past reluctance to enforce arbitration agreements by placing them on equal footing with other contracts and establishing a strong federal policy in favor of arbitration.  Id. (stating that the FAA reflects a "'liberal policy favoring arbitration'") (citation omitted); Perry v. Thomas, 482 U.S. 483 (1987) (observing that the FAA was "a congressional declaration of a liberal federal policy favoring arbitration"); JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F. 3d 163, 171 (2d Cir. 2004) (observing that the FAA establishes "a strong federal policy favoring arbitration as an alternative means of resolution").

The FAA, and the strong federal policy favoring arbitration that it embodies, require courts to "rigorously enforce agreements to arbitrate."  See Mitsubishi Motors Corp. v. Soler

---

[4] Plaintiff's other arbitration agreements also expressly cover claims arising under the FLSA and state wage and hour laws, such as the NYLL.  (Levitan Decl. ¶¶ 2, 5-7, 9-12, Exhs. 1, 4, 5, 6, 8, 9, 10, 11 and 12.)

Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). Moreover, any ambiguities or doubts as to the scope of an arbitration agreement are to be resolved in favor of arbitration. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995); Mitsubishi Motors Corp., 473 U.S. at 626 (concluding that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); Guyden v. Aetna, Inc., 544 F.3d 376, 382 (2d Cir. 2008) (stating that the FAA embodies the "liberal federal policy favoring arbitration agreements" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If a litigant in a court proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a judicial order compelling arbitration is *mandatory* – not discretionary. Id. "[T]he Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original); Genesco, Inc. v. T. Kakiuchi & Co., 815 F. 2d 840, 844 (2d Cir. 1987) (same). Thus, this Court should compel arbitration of Plaintiff's individual claims.

B.   The Court Should Compel Plaintiff to Arbitrate His Individual Claims.

Where, as here, an enforceable arbitration agreement covers the claims asserted in a lawsuit, the Court should enter an order staying the action and compelling arbitration. "To decide a motion to compel arbitration of claims based on statutory rights, a district court must determine only: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if

federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable." Mitsubishi Motors Corp., 473 U.S. at 626-28; Genesco, 815 F. 2d at 844 (compelling claims to arbitration); Nunez v. Citibank, N.A., No. 08 CV 5398, 2009 WL 256107, at *3 (S.D.N.Y. Feb. 3, 2009) (Jones, J.) (same). Each of these inquiries inevitably leads to the conclusion that the Court should compel Plaintiff's individual claims to arbitration and stay this action.

        1.      Plaintiff and UBSFS Agreed to Arbitration.

There can be no dispute that Plaintiff and UBSFS entered into valid, binding arbitration agreements. Plaintiff signed and/or was bound to multiple agreements in which he explicitly agreed to arbitrate claims arising out of or relating to his employment with UBSFS. See supra at 2-3. Thus, it is incontrovertible that Plaintiff entered into valid and enforceable arbitration agreements. See, e.g., Struthers v. UBS Financial Services, Inc., No. 08-cv-1381, 2009 WL 1286333, at **3-4 (S.D. Cal. May 7, 2009) (enforcing arbitration agreement and compelling the plaintiff's employment claims to arbitration).

        2.      Plaintiff's Claims Are Covered By His Arbitration Agreements.

Plaintiff's agreements to arbitrate plainly cover the FLSA and NYLL claims he asserts in this lawsuit. These arbitration agreements specifically provide that claims arising under the FLSA and state wage and hour laws (such as the NYLL) are subject to mandatory arbitration. For example, the 2009 FA Compensation Plan's arbitration clause applies to "any disputes . . . including claims for compensation [and] claims arising under the Fair Labor Standards Act . . . or any other . . . state or local employment . . . laws . . . including wage and hour laws[.]" See supra at 2. The other agreements contain similar language, specifying that disputes regarding compensation and claims arising under the FLSA and state wage and hour laws also are subject to arbitration. See supra at 2-3. Plaintiff cannot seriously argue that his FLSA and NYLL claims

are beyond the scope of his arbitration agreements, and any doubts should be resolved in favor of arbitration.

### 3. Courts Routinely Enforce Agreements To Arbitrate Overtime And Other Wage And Hour Claims.

Courts routinely compel arbitration of overtime and other wage and hour claims, such as those brought by Plaintiff here, in light of the "liberal federal policy favoring arbitration agreements."  See, e.g., Perry v. Thomas, 482 U.S. 483, 492 (1987) (requiring former securities firm employee to arbitrate statutory wage claim); Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 298 (5th Cir. 2004) (compelling arbitration of FLSA overtime claim); Adkins v. Labor Ready, Inc., 303 F. 3d 496 (4th Cir. 2002) (affirming motion to compel arbitration of wage and hour claims, including claim for allegedly unlawful deductions); Kuehner v. Dickinson & Co., 84 F.3d 316, 319-20 (9th Cir. 1996) (affirming decision to compel arbitration of FLSA claims); Reid v. Supershuttle Intern., Inc., No. 08-CV-4854, 2010 WL 1049613, at *6 (E.D.N.Y. Mar. 22, 2010) (granting motion to compel arbitration of overtime and deduction claims and holding that class waiver provision in the arbitration agreement was enforceable); Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 331 (S.D.N.Y. 2003) (compelling arbitration of federal and state law claims for failure to pay overtime wages, and concluding that Congress had not shown an intent to preclude arbitration of FLSA claims); Bolamos v. Globe Airport Security Services, Inc., No. 02-21005, 2002 WL 1839210, at *1 (S.D. Fl. May 21, 2001) (granting motion to compel arbitration of overtime and wage deduction claims under the FLSA); Giordano v. Pep Boys-Manny, Moe & Jack, Inc., No. CIV. A. 99-1281, 2001 WL 484360 at *4 (E.D. Pa. Mar. 29, 2001) (concluding that "agreements to arbitrate FLSA claims are enforceable pursuant to the FAA").  Thus, Plaintiff's FLSA and NYLL wage and hour claims are subject to arbitration.

      4.      Plaintiff's Arbitration Agreements Are Enforceable Even Though Plaintiff Will Not Be Able To Pursue Class Or Collective Action Claims In Arbitration.

Courts also repeatedly have enforced class and collective action waivers such as those contained in Plaintiff's arbitration agreements and compelled arbitration of the plaintiff's individual claims. See, e.g., Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1378 (11th Cir. 2005) (enforcing collective action waiver and compelling arbitration of the plaintiff's individual FLSA overtime claim); Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 298 (5th Cir. 2004) (same); Adkins, 303 F.3d at 503 (finding "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute"); Horenstein v. Mortg. Mkt., Inc., 9 F. App'x 618, 619 (9th Cir. 2001) ("Although plaintiffs who sign arbitration agreements lack the procedural right to proceed as a class, they nonetheless retain all substantive rights under the statute"); Pomposi v. GameStop, Inc., No. 09-340, 2010 WL 147196, at *11 (D. Conn. Jan. 11, 2010) (finding FLSA collective action waiver in arbitration agreement to be enforceable and compelling arbitration of plaintiff's individual FLSA overtime claim); Reid, 2010 WL 1049613, at *6 (granting motion to compel arbitration of overtime and deduction claims and holding that class waiver provision in the arbitration agreement was enforceable); Nayal v. HIP Network Svcs. IPA, Inc., 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) ("Courts applying New York law . . . have uniformly held that class action waivers are not unconscionable."); Johnson v. The Pep Boys – Manny, Moe & Jack, Inc., No. 08-cv-2313-WSD, slip op. at 23, Doc. No. 26 (N.D. Ga. Nov. 25, 2008) ("[c]ollective action waivers in arbitration agreements are valid and enforceable, including as they apply to FLSA claims") (attached as Ex. 1 to the Declaration of Andrew J. Schaffran ("Schaffran Decl."), filed herewith); La Torre v. BFS Retail and Commercial Operations, LLC, No. 08-22046-CIV, 2008 WL 5156301, at *5 (S.D. Fla. Dec. 8, 2008) (enforcing collective action waiver and

compelling arbitration of individual FLSA claim); Cf. Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S. Ct. 1758, 1775 (U.S. 2010) (recognizing and lauding the benefits of individual, bilateral arbitration).

Indeed, just last month, the United States Supreme Court reaffirmed the enforceability of arbitration agreements containing class and collective action waivers. There, the plaintiffs were customers of AT&T Mobility who had brought a class action in federal court on behalf of customers alleging that the company engaged in false advertising and other unfair business practices. AT&T Mobility, 2011 WL 1561956, at *3. AT&T Mobility moved to compel individual arbitration, pursuant to the arbitration clause in the parties' customer agreement. Id. The district court denied the motion, and its opinion was affirmed by the United States Court of Appeals for the Ninth Circuit on the basis that the class action waiver provision was unconscionable under California state law because AT&T Mobility had failed to show that bilateral arbitration adequately substituted for the purported deterrent effects of class actions. Id. at **3-4.

The Supreme Court reversed the Ninth Circuit's decision, emphasizing the strong federal policy favoring arbitration and that the FAA requires courts to put arbitration agreements on an equal footing with other contracts when analyzing their enforceability. Id. at *5. For example, the Supreme Court held that courts cannot apply a traditional doctrine such as duress or unconscionability in a fashion that disfavors arbitration. Id. at **6-7. Instead, courts must adhere to the "principal purpose of the FAA," and "ensure that private arbitration agreements are enforced according to their terms." Id. at *8.

In re-affirming the strong federal policy favoring arbitration, the Supreme Court rejected the proposition that an arbitration agreement should not be enforced on the terms agreed to by

the parties merely because it contains a class action waiver, even if there is evidence of unequal bargaining power or that any individual recovery would be "predictably small." Id. at ** 9, 12-13.  As the Supreme Court explained in rejecting the argument that a class action waiver effectively precludes "small-dollar" claims from being resolved, a court "cannot require a procedure that is inconsistent with the FAA, even if it desirable for unrelated reasons." Id. at *13.

Based on the guidance of AT&T Mobility and the weight of case law in support of arbitration, Plaintiff cannot seriously challenge the enforceability of his arbitration agreements.  Indeed, failing to even acknowledge their existence, Plaintiff has not alleged any facts in his Amended Complaint to challenge the enforceability of his arbitration agreements and class and collective action waivers.  As a highly-compensated employee who received valuable consideration in exchange for his repeated and voluntary agreements to arbitrate and to waive any right to bring or be a party to any class or collective action, Plaintiff evidently recognizes that there is no legitimate basis for him to challenge the enforceability of his agreements.  Plaintiff knowingly entered into these agreements as a sophisticated financial advisor.  See Marsh v. 33 Prudential Securities, Inc., 1 N.Y.3d 146, 155 (2003) (noting in wage deduction action that financial advisors were "sophisticated" and could assess the benefits and potential rewards of participating in a stock plan).  As the plain language of Plaintiff's arbitration agreements makes clear that the parties intended for the claims in this action to be pursued, if at all, individually and in arbitration, this Court should enforce Plaintiff's arbitration agreements and compel arbitration of his individual claims.

    C.    The Court Should Stay This Action.

UBSFS also requests that the Court stay this action pending the conclusion of arbitration.  9 U.S.C. § 3 ("[T]he court . . . upon being satisfied that the issue . . . is referable to arbitration . . .

shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ."); see, e.g., Clinton v. Oppenheimer & Co., Inc., No. 10 CV 3286, 2011 WL 1496357, at *8 (S.D.N.Y. Mar. 17, 2011) (granting motion to stay and compel arbitration); McIntosh v. Morgan & Stanley, 3:10-cv-886, 2010 WL 4810603, at *3 (N.D.N.Y. Nov. 19, 2010) (same); Whitelock v. Morgan Stanley Smith Barney, LLC, 82 A.D. 3d 1212, 1212 (N.Y.A.D. 2d. Dep't 2011) (affirming motion to stay and compel arbitration).

## IV.     CONCLUSION

Plaintiff agreed on no fewer than eight occasions to individually arbitrate the very same claims asserted in his Amended Complaint, and to waive any right to commence or be a party to any class or collective action. Plaintiff's arbitration agreements and class and collective action waivers are enforceable. Thus, as more fully explained above, the Court should compel arbitration of Plaintiff's individual claims and stay this action pending the conclusion of arbitration.

Dated: May 27, 2011
       New York, New York       MORGAN, LEWIS & BOCKIUS LLP

By: /s/  Andrew J. Schaffran
    Andrew J. Schaffran
    Samuel S. Shaulson
101 Park Avenue
New York, NY 10178
212.309.6000 (tel)
212.309.6001 (fax)
dschaffran@morganlewis.com
sshaulson@morganlewis.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2011, Defendants' Motion to Compel Arbitration and Stay This Action, together with their proposed Order, supporting Memorandum of Law, Declaration of Andrew J. Schaffran (and Exhibit 1 thereto), and Declaration of Matthew Levitan (and Exhibits 1-11 thereto), was filed electronically via Electronic Case Filing and served by first-class U.S. mail, postage pre-paid on the following:

>Jeffrey G. Smith, Esq.
>Robert Abrams, Esq.
>Matthew M. Guiney, Esq.
>Wolf Haldenstein Adler Freeman & Herz LLP
>270 Madison Ave.
>New York, New York  10016
>
>*Counsel for Plaintiff*

By: /s/  Andrew J. Schaffran
Andrew J. Schaffran