**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LARRY LAVOICE, on behalf of himself and all others similarly situated, | : | |
| | : | |
| | : | Civ. No. 11-CIV-2308(BSJ)(JLC) |
| Plaintiff, | : | |
| | : | |
| v. | : | ORAL ARGUMENT REQUESTED |
| | : | |
| UBS FINANCIAL SERVICES, INC., UBS AG, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS OR, ALTERNATIVELY, FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  RELEVANT FACTUAL AND PROCEDURAL HISTORY ........................................... 4

III.  ARGUMENT ................................................................................................... 12

  A.  The Court Should Dismiss This Action With Prejudice. .................................... 12

  B.  The Court Should Enter A Protective Order ...................................................... 14

IV.  CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Hammell v. Paribas,
    No. 90 CIV. 4799 (JSM), 1993 WL 426844 (S.D.N.Y. Oct. 22, 1993) ................................13

Intertec Contracting v. Turner Steiner Int'l, S.A.
    No. 98 Civ. 9116(CSH), 2001 WL 812224 (S.D.N.Y. July 18, 2001) ....................................15

Koch v. Greenberg,
    No. 07-9600, 2011 WL 4485975 (S.D.N.Y. Sept. 28, 2011) (Jones, J.) ...................................4

Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.,
    239 F. Supp. 2d 332 (S.D.N.Y. 2002)..............................................................................12, 13

Mazza Consulting Group, Inc. v. Canam Steel Corp.,
    No. 08 Civ. 38(NGG), 2008 WL 1809313 (E.D.N.Y. Apr. 21, 2008) ...................................12

Orman v. Citigroup, Inc.,
    No. 11 Civ 7086 (DAB), 2012 U.S. Dist. LEXIS 131532 (S.D.N.Y. Sept. 12, 2012)............12

Ross v. Bank of America, N.A. (USA),
    No. 05 Civ. 7116(WHP), 2006 WL 36909 (S.D.N.Y. Jan. 6, 2006) ......................................15

Rubin v. Sona Int'l Corp.,
    457 F. Supp. 2d 191 (S.D.N.Y. 2006)...................................................................................12

Salim Oleochemicals v. M/V SHROPSHIRE,
    278 F.3d 90 (2d Cir. 2002)....................................................................................................13

Spencer Trask Software and Information Services, LLC v. Post Intern. Ltd.,
    206 F.R.D. 367 (S.D.N.Y. 2002) ..........................................................................................15

Spencer–Franklin v. Citigroup/Citibank N.A.,
    No. 06 Civ. 3475(GBD)(GWG), 2007 WL 521295 (S.D.N.Y. Feb. 21, 2007)......................13

Transunion Corp. v. PepsiCo, Inc.,
    811 F.2d 127 (2d Cir. 1987)..................................................................................................15

Valdes v. Swift Transp. Co, Inc.,
    292 F. Supp. 2d 524 (S.D.N.Y. 2003)...................................................................................12

**TABLE OF AUTHORITIES**
(continued)

**Page**

**STATUTES**

28 U.S.C. § 1404(a) ...........................................................................................6

28 U.S.C. § 1927 ...............................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11(c)(1) ....................................................................................4

Fed. R. Civ. P. 12(c) .......................................................................................12

Fed. R. Civ. P. 26(c) .......................................................................................15

Fed. R. Civ. P. 56 ...........................................................................................12

## I.   <u>INTRODUCTION</u>

On January 13, 2012, this Court granted Defendants' Motion to Compel Arbitration, properly concluding that the arbitration agreement and class and collective action waivers entered into by Plaintiff Larry LaVoice ("LaVoice") were enforceable and that LaVoice was obligated to arbitrate his claims against Defendants UBS Financial Services Inc. and UBS AG ("UBS" or "Defendants").  In doing so, the Court elected to stay the action – rather than dismiss it entirely at that time – allowing it to retain jurisdiction to enforce any arbitration award following the completion of arbitration.  LaVoice never sought reconsideration or interlocutory review of the Court's decision.

LaVoice has not initiated or submitted his claims to arbitration as ordered by this Court. Instead, LaVoice has repeatedly insisted to this Court that he has no intention of pursuing his claims in arbitration:

- "If this action cannot be maintained as a class action, I would definitely not submit my claims to a FINRA arbitration . . . ."  (<u>See</u> LaVoice Affidavit [Dkt. No. 20], ¶ 5.)

- "I respectfully decline to bring the arbitration claim[.]"   (<u>See</u> LaVoice Declaration [Dkt. No. 52-1], ¶ 3.)

- "Mr. LaVoice does not intend to pursue arbitration."  (<u>See</u> Tr. of hearing on June 4, 2012, at 7.)[1]

Thus, LaVoice has made it abundantly clear that he will not pursue his claim in arbitration and, consequently, that there will never be an arbitration award for this Court to enforce.  Therefore, it is time to bring this action to a final conclusion.

In addition, during a hearing before this Court on June 26, 2012, it was discussed and agreed that the next step in the <u>Cohen</u>[2] and <u>LaVoice</u> actions would be for this Court to decide the

---

[1]     The Transcript of the hearing in this action on June 4, 2012 is attached as Exhibit ("Ex.") 1 to the supporting Declaration of Andrew S. Schaffran ("Schaffran Decl.") filed herewith.

pending motion to compel arbitration in <u>Cohen</u> and that, consistent with the Stipulation and

Order in <u>Cohen</u> staying discovery and motion practice in that case pending the Court's decision

on the motion to compel, the parties' litigation in <u>LaVoice</u> "would be held in abeyance … until

such time as the Court decided the motion to compel." (See Tr. of hearing on June 26, 2012, at

7-8.)[3]

Now, notwithstanding that agreement to hold <u>LaVoice</u> in abeyance and this Court's order

compelling arbitration, LaVoice is improperly attempting to obtain class-wide discovery in this

action. Specifically, LaVoice has served UBS with broad, class-wide discovery requests in this

action even though this Court has compelled arbitration of his claims and ruled that his class and

collective action waivers are enforceable. (<u>See</u> Plaintiff's First Request for Production of

Documents Directed to Defendant UBS Financial Services Inc., UBS AG ("Document

Requests"), attached as Ex. 3 to the Schaffran Decl.) Tellingly, counsel for LaVoice admits that

these requests are intended to be limited "to material relevant or likely to be relevant to Mr.

LaVoice's FLSA collective and New York Rule 23 class claims." (<u>See</u> September 20, 2012

Letter from R. Abrams to A. Schaffran attached as Ex. 4 to the Schaffran Decl.) However, given

the fact that this Court has compelled arbitration of LaVoice's claims and ruled that his class and

collective action waivers are enforceable, LaVoice has no standing or basis for seeking discovery

in this action.

Defendants repeatedly have asked LaVoice to withdraw his Document Requests both

because they were served in direct violation of this Court's Order compelling arbitration (and

ruling that LaVoice's class and collective action waivers are enforceable), and because LaVoice

---

[2]     "<u>Cohen</u>" refers to <u>Cohen v. UBS Financial Services Inc. and UBS AG</u>, No. 11-03623, pending in
this Court.
[3]     The Transcript of the hearing in this action on June 26, 2012 is attached as Ex. 2 to the Schaffran
Decl.

has no standing or basis for seeking discovery in this action at this time.  Defendants also proposed to LaVoice's counsel that the parties enter into a stipulation to stay discovery in LaVoice, similar to the stipulation the parties had entered into in Cohen, pending disposition of the motion to compel arbitration in Cohen.  In that regard, Defendants' counsel explained to LaVoice's counsel that UBS believed that the parties should await the Court's decision on the pending motion to compel arbitration in Cohen before engaging in discovery or taking any other action in these cases since it was and remains UBS's intention to file motions to compel arbitration for the remaining Consent filers (i.e., individuals who filed consents to become opt-in plaintiffs) in both cases, but UBS believed it made the most sense to hold off on filing any more motions to compel arbitration in these cases until the Court decides the pending motion to compel arbitration in Cohen.  All of these requests were refused.  (See Schaffran Decl. ¶ 6 & Ex. 6.)

Defendants also asked LaVoice to agree to extend the time to respond to his Document Requests until after the motion to compel arbitration in Cohen is decided in the hope that unnecessary motion practice could be avoided.  However, after first agreeing to some limited extensions, LaVoice refused to agree to any further extensions and instead told Defendants to go ahead and file this motion.  (Id. ¶ 7 & Exs. 7-10.)  Thus, Defendants were left with no choice but to file this motion seeking the assistance of the Court.

It is respectfully submitted that, under these circumstances, the Court should dismiss this action with prejudice.  Although this Court acted properly in staying, rather than dismissing this action when it issued its Order compelling arbitration so that it would have jurisdiction to enforce any arbitration award rendered following arbitration of LaVoice's claims, LaVoice's decision not to pursue arbitration of his claims necessitates the dismissal of this action at this

time.  The need for dismissal is particularly compelling now that LaVoice is attempting to abuse

this action to impermissibly obtain discovery of documents that would be arguably relevant to

his own individual claims in any arbitration concerning his claims as well as class-wide

discovery of documents that would arguably be relevant to the claims of all UBS Financial

Advisors nationwide, even though this Court has already compelled arbitration of LaVoice's

individual claims and ruled that his class and collective action waivers are enforceable.

Alternatively, if the Court declines to dismiss this action with prejudice at this time, UBS

respectfully requests that the Court enter a protective order with respect to LaVoice's Document

Requests (and any other discovery LaVoice may be contemplating in this action) in light of the

Court's ruling that LaVoice cannot litigate his claims in this forum.[4]

## II.    RELEVANT FACTUAL AND PROCEDURAL HISTORY

On April 4, 2011, LaVoice, represented by Wolf Haldenstein Adler Freeman & Herz LLP

("LaVoice's counsel" or "Plaintiffs' counsel"), filed this putative nationwide collective action

(under the FLSA) and putative New York State class action (under the New York Labor Law).[5]

---

[4]    In addition to dismissing the action or entering a protective order, the Court should award
Defendants their fees incurred in bringing this Motion, which was necessitated by LaVoice's improper
Document Requests which were signed by his counsel and which he and his counsel refused to withdraw
despite repeated requests that they do so.  As discussed below, there is absolutely no colorable argument
to support LaVoice's attempt to pursue discovery in this action despite the Court's Order compelling his
claims to arbitration and ruling that his class and collective action waivers are enforceable.  Indeed, his
counsel has been unable to articulate any legitimate basis for these Requests.  Rather, LaVoice's counsel
has admitted that "[u]nder your Honor's order, unless the order has changed, [LaVoice] can't proceed
with this litigation not having gone to arbitration.  And we don't argue that he can."  (See Schaffran Decl.,
Ex. 1 at 9.)  Under the circumstances described in this Memorandum of Law, the Court could award fees
as a sanction under Federal Rule 11(c)(1) or 28 U.S.C. § 1927 after allowing LaVoice's counsel the
opportunity to explain their position.  See also Koch v. Greenberg, No. 07-9600, 2011 WL 4485975, at *4
(S.D.N.Y. Sept. 28, 2011) (awarding sanctions where party willfully disregarded court order) (Jones, J.).

[5]    LaVoice subsequently filed an Amended Complaint on April 27, 2011 (see Dkt. No. 4), which
modified the named Defendants but did not change the named plaintiff or the substantive allegations in
the complaint.

(See Dkt. No. 1.)  LaVoice was and has at all time remained the sole named plaintiff and proposed class/collective action representative in this action.

On May 2, 2011, 20 individuals filed consents to become opt-in plaintiffs ("Consent filers") in this action.[6]  (Dkt. No. 6.)  Importantly, none of these Consent filers was ever added as a named plaintiff or class/collective action representative in this action.  Also importantly, all 20 Consent filers worked for UBS in California; none of them ever worked for UBS in New York.

On April 27, 2011, Eliot Cohen ("Cohen"), also represented by LaVoice's counsel, filed a copy-cat putative nationwide collective action (under the FLSA) and California class action (under the California Labor Code) in the United States District Court for the Central District of California against the same Defendants and alleging virtually the same claims.  (See Cohen, Dkt. No. 1.)

On May 27, 2011, UBS moved to compel arbitration of LaVoice's claims based on the numerous arbitration agreements he had entered into with UBS.  (See Dkt. No. 10.)  UBS also asked that this action be stayed, rather than dismissed, so that the Court could retain jurisdiction to enforce an arbitration award.  Indeed, Defendants' proposed Order called for the matter to be "STAYED pending resolution of the arbitration proceedings."  (See Dkt. No. 10-1.)

On June 28, 2011, while UBS's motion to compel arbitration was being briefed, LaVoice's counsel filed a motion before the MDL Panel seeking to transfer and consolidate Cohen and this action before this Court.  On October 10, 2011, the MDL Panel denied LaVoice's

---

[6]     The Plaintiffs who filed Consents to become Consent filers in this action are Sam Bellestri, Raymond Calderon, James Dugan, Karl Gates, Stephen Grimes, Robert Gunning, Barbara Horvath, Andrew Jacobson, Glenn Kenes, Steven Kern, Robert Lakosil, Larry LaVoice, Philip Ricasata, Joshua Rudoy, Feng Shen, Charles Shoemaker, Stan Sklenar, Jason St. Claire, Scott Toomasson, Darren Vilardo, and Joellen Wheeler.  (See Dkt. Nos. 6 and 6-1 to 6-20.)  All but five of those individuals have since withdrawn their Consents (see Dkt. Nos. 42 - 50, 53, 55, 63, 70, and 74-75.), and UBS has no objection to these five consent filers withdrawing their consents in LaVoice and filing new Consents in Cohen.

request.  Thereafter, on January 9, 2012, UBS filed a motion to dismiss, stay, or transfer <u>Cohen</u> to this Court based on the first-filed rule and 28 U.S.C. § 1404(a).  (<u>See</u> <u>Cohen</u>, Dkt. No. 25.)

On January 13, 2012, this Court granted UBS's motion to compel arbitration and ordered a stay of this action "pending the completion of arbitration," making clear that it was retaining jurisdiction solely in connection with the anticipated arbitration of LaVoice's individual claims. (<u>See</u> Dkt. No. 41, at 22.)

LaVoice did not move for reconsideration or seek leave to appeal the Court's January 13 Order and has conceded that, at present, there is no basis for him to do so.  (<u>See</u> June 26, 2012 Hearing Transcript, at 10-11, attached as Ex. 2 to the Schaffran Decl.)  In addition, LaVoice has repeatedly insisted to this Court that he has no intention of pursuing his claims in arbitration:

- "If this action cannot be maintained as a class action, I would definitely not submit my claims to a FINRA arbitration . . . ."  (<u>See</u> LaVoice Affidavit [Dkt. No. 20], ¶ 5.)

- "…I respectfully decline to bring the arbitration claim[.]"  (<u>See</u> LaVoice Declaration [Dkt. No. 52-1], ¶ 3.)

- "Mr. LaVoice does not intend to pursue arbitration."  (<u>See</u> Schaffran Decl., Ex. 1)

Consistent with these representations, LaVoice has not initiated or filed any claims in arbitration.

After this Court entered its order compelling arbitration in this case, and before UBS's motion to transfer the <u>Cohen</u> action to New York was decided, LaVoice and nine of the Consent filers in this action sought to evade this Court's jurisdiction by purporting to withdraw their Consents filed in this action in order to re-file their Consents in <u>Cohen</u>.  (<u>See</u> Dkt. Nos. 42-50, 53.)  LaVoice also filed a motion for voluntary dismissal of this action without prejudice.  (<u>See</u> Dkt. No. 51.)  These efforts to flee this Court, despite having previously moved the MDL Panel to have both <u>LaVoice</u> and <u>Cohen</u> consolidated before this Court, was clearly in reaction to the Court's determination that their arbitration agreements and class and collective action waivers

are enforceable.  However, on March 21, 2012, their efforts were thwarted when Judge Marshall

of the Central District of California granted UBS's motion to transfer Cohen to this Court.

(Cohen, Dkt. No. 51.)  After Cohen was transferred to this Court, LaVoice withdrew his motion

for voluntary dismissal in LaVoice.  (See Schaffran Decl., Ex. 1, at 3 (LaVoice's counsel

informed the Court that "we'd like to withdraw the motion".))  LaVoice also agreed not to file a

new Consent.  (See Schaffran Decl., Ex. 2, at 3-4 (LaVoice's counsel informed the Court that

"defendants are not willing to stipulate to Mr. LaVoice refiling his consent that he withdrew in

New York, so we have accepted that.")  In addition, the parties stipulated to a stay of discovery

in Cohen, pending disposition of the motion to compel arbitration in that action.  (Cohen, Dkt.

No. 33.)

    During the Court-ordered telephonic hearing in this action on June 4, 2012, LaVoice's

counsel admitted that "[u]nder your Honor's order [compelling arbitration, LaVoice] can't

proceed with this litigation not having gone to arbitration.  And we don't argue that he can."

(See Schaffran Decl., Ex. 1, at 9.)  Also at this hearing, the Court informed the parties that "I'm

really not inclined to allow Mr. LaVoice to have a dismissal without prejudice."  (See id., at 13.)

    The parties subsequently negotiated a proposed Stipulation and Order, that has since been

approved and entered by the Court, that addressed the disposition of the 20 Consent filers who

filed Consents in LaVoice.  (See Dkt. No. 70.)  Specifically, the parties agreed that some of these

Consent filers would withdraw their Consents in LaVoice and file new Consents in Cohen and

others would withdraw their Consents in LaVoice but not file new Consents in Cohen.  (Id.)

Five of them would remain as Consent filers in LaVoice.  (Id.)

    Of the five Consent filers that remain in LaVoice, none worked for UBS in New York

and, consequently, none of them could possibly assert any individual or class-wide claims under

the New York Labor Law or act as a representative for a New York class.  Moreover, all five had

the opportunity to withdraw their Consents in LaVoice and file new Consents in Cohen where

they are already members of the putative California class action at the same time that the other

California-based Consent filers in LaVoice did that months ago, but all five elected not to do so

at that time.  UBS remains willing to enter into the same stipulation permitting them to do so

now so that they can seek to pursue their claims together with the other California-based

plaintiffs and Consent filers in Cohen, although (like all plaintiffs and Consent filers in these

actions) their claims ultimately can only be adjudicated in arbitration pursuant to the agreements

they entered into with UBS.

The Court held another telephonic hearing on June 26, 2012, to address the then proposed

Stipulation and Order that was thereafter signed by this Court (Dkt. No. 70).  It was during this

hearing that (1) LaVoice agreed not to file a new Consent (see Schaffran Decl., Ex. 2, at 3-4

(LaVoice's counsel informed the Court that "defendants are not willing to stipulate to Mr.

LaVoice refiling his consent that he withdrew in New York, so we have accepted that")) and (2)

it was discussed and agreed that the next step in the Cohen and LaVoice actions would be for this

Court to decide the pending motion to compel arbitration in Cohen and that, consistent with the

Stipulation and Order in Cohen, any other litigation in LaVoice "would be held in abeyance …

until such time as the Court decided the motion to compel." (See id., at 7-8.)  The Court also

suggested that UBS consider seeking finality in this action in light of LaVoice's decision not to

arbitrate his claims, and counsel for UBS explained that it would like to avoid any unnecessary

motion practice or briefing. (See id., at 11.)  Shortly thereafter, on July 5, 2012, the Court lifted

its stay in this action "[s]ince the Court has been informed by counsel that Plaintiff does not

intend to arbitrate his claims[,]" thus making clear that this action had remained pending and

8

stayed (rather than being dismissed) based on the expectation that LaVoice would pursue

arbitration.  (See Dkt. No. 71.)

On July 23, 2012, LaVoice served UBS with Plaintiff's First Request for Production of

Documents, which contained 29 requests and sought nationwide discovery.  (Schaffran Decl.,

Ex. 5.)  These Requests impermissibly sought documents that would be arguably relevant to

LaVoice's individual claims in any arbitration concerning his claims.  These Requests also

impermissibly sought discovery of documents that would be arguably relevant to the claims of

all UBS Financial Advisors nationwide.  As just a few examples, the Requests demanded:

- Any and all documents that can be used to determine the time period which a Financial Advisor or Broker was working at a UBS office.  Such documents should include, without limitation, building security records, phone records, email records and general computer records, or other records from which an employees' start time or departure time could be inferred. (Request No. 1)

- Any and all documents concerning [UBS's] policy of paying or not paying overtime wage compensation to [UBS] Brokers.  (Request No. 4)

- Any and all documents concerning [UBS's] policy of paying or not paying compensation to [UBS] Financial Consultants for a work week longer than forty (40) hours or a day longer than eight (8) hours.  (Request No. 7)

- Any and all documents concerning whether or not a Broker is a "commission salesman" under any of the Fair Labor Standards Act, the New York Labor Law, or the California Labor Law.[7]  (Request No. 10)

- Any and all documents concerning [UBS's] policy of reimbursement of [UBS] Brokers for business expenses incurred in the course of their work on [UBS's] behalf.  (Request No. 12)

- Any and all summary documents which, individually or cumulatively, show the total number of Brokers who were employed by [UBS] at any time during the Relevant Time Period.  (Request No. 24)

---

[7]     No California law claims have been asserted in this action.  The reference to the California Labor Law in these Requests removes any doubt that they were a back-door effort to secure discovery for the plaintiffs in Cohen, in direct contravention of both the Order compelling arbitration in this case and the Stipulation and Order staying discovery in Cohen. (Cohen Dkt. No. 33).

(See Schaffran Decl., Ex. 5, at 7-10.)

UBS saw no basis for these Requests given this Court's Order compelling arbitration and ruling that LaVoice's class and collective action waivers were enforceable.  Although UBS believed that these Requests were entirely improper and that it was entitled to a protective order at that time, it again tried to avoid additional motion practice.  Thus, UBS proposed to LaVoice's counsel that the parties enter into a stipulation to stay discovery in LaVoice, similar to the stipulation the parties had entered into in Cohen, pending disposition of the motion to compel arbitration in Cohen.  In that regard, Defendants' counsel explained to LaVoice's counsel that UBS believed that the parties should await the Court's decision on the pending motion to compel arbitration in Cohen before engaging in discovery or taking any other action in these cases since UBS intends to file motions to compel arbitration for the remaining Consent filers in both cases, but believes it makes the most sense to hold off on filing any more motions to compel arbitration in these cases until the Court decides the pending motion to compel arbitration in Cohen.  (See Schaffran Decl., ¶ 6 and July 30, 2012 e-mail from A. Schaffran to J. Smith and R. Abrams at Schaffran Decl., Ex. 6.)  Although LaVoice's counsel refused to enter into a stipulation to stay discovery in LaVoice or to withdraw the Requests, they agreed to extend Defendants' time to respond until September 30, 2012, so that an immediate motion by UBS for relief would not be necessary.  (See August 7, 2012 e-mail from A. Schaffran to J. Smith and R. Abrams at Schaffran Decl., Ex. 7.)  On September 11, 2012, LaVoice's counsel agreed to a further extension of time until October 31, 2012.  (See September 9-11, 2012 e-mail exchange between R. Abrams and A. Schaffran at Schaffran Decl., Ex. 8.)

On September 20, 2012, LaVoice served UBS with amended Document Requests.  (See September 20, 2012 Letter from R. Abrams to A. Schaffran attaching amended Document Requests at Schaffran Decl., Exs. 3 & 4.)  The amended Document Requests were identical to the initial Requests, except that they confirmed that they were served solely on behalf of LaVoice (and not the remaining Consent filers in LaVoice, all of whom had only worked for UBS in California) and removed all explicit references to the California Labor Code.[8]  The amended Document Requests continue to impermissibly seek discovery of documents that would be arguably relevant to LaVoice's individual claims in any arbitration concerning his claims as well as broad, class-wide discovery of documents that would be arguably relevant to the claims of all UBS Financial Advisors nationwide even though this Court has compelled arbitration of LaVoice's individual claims and ruled that LaVoice's class and collective action waivers are enforceable.  Tellingly, counsel for LaVoice admits that these Requests (a) did not include any "reference to the putative collective [action] members who have filed Consents to Be Party Plaintiffs in LaVoice, since the collective action has not yet been certified" and (b) are intended to be limited "to material relevant or likely to be relevant to Mr. LaVoice's FLSA collective and New York Rule 23 class claims."  (See Schaffran Decl., Ex. 4.)

UBS again asked LaVoice's counsel to withdraw these Document Requests, or to at least agree to extend Defendants' time to respond until after the motion to compel arbitration in Cohen

---

[8]      While the amended Requests removed explicit references to the California Labor Code, it is still clear that their purpose is to aid Plaintiffs' counsel in the Cohen litigation.  For example, Request No. 7 of the amended Requests seeks "[a]ny and all documents concerning [UBS's] policy of paying or not paying compensation to UBS] Financial Consultants for a work week longer than forty (40) hours or **a day longer than eight (8) hours**."  (Schaffran Decl., Ex. 3, at 7.) (emphasis added).  While neither the FLSA nor the NYLL provides for overtime payments to non-exempt employees who work in excess of eight hours per day, California law does have such a requirement for non-exempt employees and, therefore, responsive documents would only be of potential relevance in Cohen.  In addition, all of the remaining Document Requests are relevant to both the FLSA and the California Labor Code claims in the Cohen action.

was decided so that the parties could avoid unnecessary motion practice, but LaVoice's counsel rejected those proposals and agreed only to a final two-week extension (later extended one more week due to Hurricane Sandy).  (See October 7-15, 2012 e-mail exchange between R. Abrams, M. Puma, and A. Schaffran at Schaffran Ex. 9, and November 8, 2012 e-mail exchange between R. Abrams and A. Schaffran at Schaffran Decl., Ex. 10.)  Because LaVoice and his counsel have refused to withdraw their improper Document Requests or to further extend the time for UBS to respond to them despite this Court's Order compelling arbitration, UBS was forced to file the instant motion.

## III.   ARGUMENT

### A.   The Court Should Dismiss This Action With Prejudice.[9]

Courts dismiss actions after compelling arbitration where "granting a stay would serve no useful purpose."  Orman v. Citigroup, Inc., No. 11-7086 (DAB), 2012 U.S. Dist. LEXIS 131532, at *9 (S.D.N.Y. Sept. 12, 2012); see also Lewis Tree Serv., Inc. v. Lucent Technologies, Inc., 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) (explaining that dismissal is appropriate where "no useful purpose will be served by granting a stay").  In Orman, for instance, the Court compelled arbitration, rejecting plaintiffs' "vindication of statutory rights" argument as inapplicable to state law claims, and dismissed the action since "all of Plaintiffs' causes of action must be arbitrated." Id.  See also Mazza Consulting Group, Inc. v. Canam Steel Corp., No. 08 Civ. 38(NGG), 2008 WL 1809313, at *7 (E.D.N.Y. Apr. 21, 2008) (compelling arbitration and dismissing action); Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) (same); Valdes v. Swift

---

[9]    This Court has the authority to dismiss this action based on either a judgment on the pleadings pursuant to FRCP 12(c) or summary judgment pursuant to FRCP 56.

Transp. Co, Inc., 292 F. Supp. 2d 524, 534 (S.D.N.Y. 2003) (same); Lewis Tree Serv., Inc. , 239

F. Supp. 2d at 340 (same).[10]

     The Court should dismiss this action with prejudice.  Here, "granting a stay [rather than

dismissing the action] would serve no useful purpose" because arbitration has been compelled

and none of LaVoice's claims remain before this Court.  The rationale for staying (rather than

dismissing) the action no longer exists because LaVoice has repeatedly insisted that he will not

pursue his claims in arbitration.  (See supra, at 5.)  Moreover, nothing remains for the Court to

adjudicate in this action, as this Court has already compelled arbitration of LaVoice's individual

claims and ruled that his class and collective action waivers are enforceable.[11]  Finally, the Court

recognized that this action is ripe for dismissal by ordering the stay lifted "[s]ince the Court has

been informed by counsel that Plaintiff does not intend to arbitrate his claims[.]"  Under these

circumstances, there is no reason for this action to remain on the Court's docket.  See, e.g.,

Spencer–Franklin v. Citigroup/Citibank N.A., No. 06 Civ. 3475(GBD)(GWG), 2007 WL

521295, at *4 (S.D.N.Y. Feb. 21, 2007) ("Where all of the issues raised in the Complaint must be

---

[10]    When courts merely stay, rather than dismiss, an action at the time that claims are compelled to arbitration, they do so to expedite arbitration and retain jurisdiction to later enforce the arbitration award. See Salim Oleochemicals v. M/V SHROPSHIRE, 278 F.3d 90, 93 (2d Cir. 2002) (explaining that a stay may be preferable to dismissal when compelling arbitration in order to expedite disposition of claims in arbitration since a stay is not automatically appealable, whereas dismissal can be appealed).  Here, there is no longer any reason to seek expedited disposition of LaVoice's claims in arbitration since LaVoice has elected not to pursue his claims in arbitration.

[11]    The five remaining Consent filers in this action are no obstacle to dismissal since LaVoice was (and remains) the only named Plaintiff in this action and the Court has already compelled arbitration of his individual claims and ruled that his collective action waiver is enforceable, so he has no standing to represent the putative collective action.  If these individuals wish to continue to pursue their claims, they can seek to withdraw their Consents in LaVoice and file new Consents in Cohen, where they are already members of the putative class and collective actions in that case.  Indeed, this is precisely what the other California-based Consent filers in this case did months ago.  Moreover, all of these Consent filers worked for UBS in California, not New York and, therefore, have no standing or basis for asserting claims under the New York Labor Law.  See, e.g., Hammell v. Paribas, No. 90-4799 (JSM), 1993 WL 426844, at *1 (S.D.N.Y. Oct. 22, 1993) (holding NYLL does not have extraterritorial jurisdiction and that its purpose "is clearly to protect workers laboring in New York.")

submitted to arbitration, the Court may dismiss an action rather than stay proceedings.").
Accordingly, the Court's further retention of jurisdiction in this case "would serve no useful
purpose" and dismissal is appropriate at this time.

Although dismissal is warranted for the reasons set forth above, it is particularly
appropriate here because the decision by LaVoice and his counsel to serve and insist upon
responses to discovery requests emphasizes the potential harm associated with the Court not
fully disposing of this matter.  LaVoice and his counsel seek to use this action to obtain both
discovery that would be arguably relevant in any arbitration of LaVoice's individual claims as
well as sweeping class-wide discovery that they have no standing or basis for seeking in this
action.  If LaVoice wishes to pursue his individual claims against Defendants, the appropriate
forum to seek discovery relevant to his claims would be in arbitration.  Moreover, given this
Court's Order compelling arbitration of LaVoice's individual claims and ruling that his class and
collective action waivers are enforceable, he has no standing or basis for seeking the class
discovery he is seeking in his Document Requests, and it appears that these Requests are an
attempt by LaVoice and his counsel to circumvent the Stipulation and Order in Cohen precluding
discovery in that action until the Court rules on the pending Motion to Compel.  The Court
should not countenance such gamesmanship, and it should dismiss this action with prejudice.

**B.**     **The Court Should Enter A Protective Order.**

If the Court is not inclined to dismiss this action at this time, which it should, the Court
should at least enter a protective order preventing LaVoice from seeking discovery in this action
given the Court's Order compelling arbitration of his individual claims and ruling that his class
and collective action waivers are enforceable.  As described above, UBS sought to spare the
Court from motion practice by seeking extensions of time from LaVoice to respond to his

14

discovery demands with the hope that the Court's disposition of the pending Motion to Compel arbitration in <u>Cohen</u> might provide a basis for resolving this issue without the necessity of motion practice.  (<u>See</u> supra at 2-3, 10-12.)  Now that LaVoice and his counsel have refused to grant further extensions, however, UBS had no choice but to seek relief from the Court.

The Federal Rules provide that, upon motion by a party, the Court may make any order which justice requires, including that discovery not be had.  <u>See</u> Fed. R. Civ. P. 26(c).  The Federal Rules also empower the Court to impose a stay of discovery upon a showing of good cause.  <u>See</u> <u>id.</u>  It is well-recognized that the decision to allow or deny discovery "is committed to the sound discretion of the district court" and subject to review only for "abuse of discretion." <u>Transunion Corp. v. PepsiCo, Inc.</u>, 811 F.2d 127, 130 (2d Cir. 1987).  Courts routinely stay discovery or enter a protective order precluding discovery when there is a pending dispositive motion.  <u>See, e.g.</u>, <u>Spencer Trask Software and Information Services, LLC v. Post Intern. Ltd.</u>, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (granting motion to stay discovery pending motion to dismiss); <u>Ross v. Bank of America, N.A. (USA)</u>, No. 05 Civ. 7116(WHP), 2006 WL 36909, at *1 (S.D.N.Y. Jan. 6, 2006) ("In view of the threshold issues concerning arbitration, this Court concludes that a stay of discovery is appropriate."); <u>Intertec Contracting v. Turner Steiner Int'l, S.A.</u>, No. 98 Civ. 9116(CSH), 2001 WL 812224, at *7 (S.D.N.Y. July 18, 2001) ("As is the general practice of district courts, a stay of discovery was imposed in this case while the motion to compel arbitration was pending before the Court.").

Here, where the Court has already granted the motion to compel arbitration of LaVoice's individual claims and ruled that his class and collective action waivers are enforceable, the rationale for a stay of discovery is even stronger because the Court has already determined that none of LaVoice's claims can proceed in this action.  Because LaVoice has no standing or basis

15

for seeking discovery in this action, the Court should at a minimum enter a protective order relieving Defendants of any obligations to respond to the Document Requests and staying all discovery in this action.

## IV.    <u>CONCLUSION</u>

As there no longer remains any reason for the Court to retain jurisdiction in this matter and LaVoice is abusing the pendency of this action by seeking to obtain discovery despite this Court's Order compelling arbitration of his individual claims and ruling that his class and collective action waivers are enforceable, UBS respectfully submits that the Court should grant its Motion and dismiss this action in its entirety, with prejudice, or at a minimum enter a protective order barring LaVoice's efforts to pursue discovery.

Dated: November 21, 2012
      New York, New York

MORGAN, LEWIS & BOCKIUS LLP
By: /s/  Andrew S. Schaffran
    Andrew S. Schaffran
    Sam S. Shaulson
101 Park Avenue
New York, NY 10178
212.309.6000 (tel)
212.309.6001 (fax)
dschaffran@morganlewis.com
sshaulson@morganlewis.com
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 21, 2012, Defendants' Motion to Dismiss or,

Alternatively, for a Protective Order, together with a proposed Order and supporting

Memorandum of Law and Declaration of Andrew J. Schaffran (and Exhibits 1-10 thereto), were

filed electronically via Electronic Case Filing and served by first-class U.S. mail, postage pre-

paid, on the following:

> Jeffrey G. Smith, Esq.
> Robert Abrams, Esq.
> Matthew M. Guiney, Esq.
> Wolf Haldenstein Adler Freeman & Herz LLP
> 270 Madison Avenue
> New York, New York  10016
>
> *Counsel for Plaintiff*
>
> By: /s/  Andrew J. Schaffran
>      Andrew J. Schaffran

17